UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:15-cv-00055-MOC

| | |
|---|---|
| VANCE CAULKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| Vs. | ) ORDER |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER** is before the court on Plaintiff's Motion for Summary Judgment (#9) and Defendant's Motion for Summary Judgment (#15). The matter has been fully briefed and is ripe for review. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

I. **Administrative History**

Plaintiff protectively filed an application for a period of disability and Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act) on January 23, 2012, alleging that he became disabled on December 1, 2010, due to inguinal nerve damage, depression, chronic pain, and post-traumatic stress disorder (PTSD) (Administrative Record (Tr.) 145). His claim was denied at the initial and reconsideration levels of review. (Tr. 43-77). At Plaintiff's request, an administrative law judge (ALJ) held a hearing on September 12, 2013, at which Plaintiff was represented by an attorney. (Tr. 30-42, 96-97). On October 22, 2013, ALJ John L. McFadyen issued a decision finding Plaintiff not disabled. (Tr. 14-25). The Appeals

Council denied Plaintiff's Request for Review on January 14, 2015, (Tr. 1-3), rendering the ALJ's decision the final decision of the Commissioner. See 20 C.F.R. § 404.981. Plaintiff has exhausted his available administrative remedies, and the case is now ripe for judicial review under Section 205(g) of the Social Security Act. See 42 U.S.C. § 405(g).

## II.	Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the court adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.	Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The

record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the exhibits contained in the administrative record. The issue is not whether the court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. For the reasons explained herein, the court finds that it is not.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

    a.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

    b.    An individual who does not have a "severe impairment" will not be found to be disabled;

    c.    If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

    d.    If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

> e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id. In this case, the Commissioner determined Plaintiff's claim at the fifth step of the sequential evaluation process.

### C. The Administrative Decision

With an alleged onset date of December 1, 2010, the issue before the ALJ was whether Plaintiff was disabled between that date through the date of decision. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 1, 2010. At step two, the ALJ found that Plaintiff has the following severe impairments: status-post left inguinal hernia repair, recurrent left inguinal hernia, and neuritis of ilioinguinal nerve. (Tr. 16). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20). The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a). Id. At step four, the ALJ found that Plaintiff could not perform any of his past relevant work. (Tr. 24). Based on an RFC for the full range of sedentary work, considering the Plaintiff's age, education, and work experience, the ALJ found Medical-Vocational Rule 201.28 directed a finding of "not disabled." (Tr. 25). Thus, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from December 1, 2010 through October

22, 2013, the date of the ALJ's decision. (Tr. 25).

**D.     Discussion**

*1. Plaintiff's Assignments of Error*

Plaintiff argues that the ALJ's decision is not supported by substantial evidence based on three assignments of error. First, he asserts the ALJ must evaluate the Department of Veteran Affairs (VA) rating decision, and states as the first issue of the case: "Can a decision that summarily dismisses a rating decision without proper evaluation stand?" Next, Plaintiff alleges that the ALJ erroneously relied on the grids, at one point finding non-exertional limitations that would preclude use of the grids, and at another finding no such limitations, and asks, "[c]an a decision that is based on inconsistent finding of fact be proper?" Finally, Plaintiff argues that the ALJ failed to perform the required function-by-function analysis and evaluate all of his impairments in combination, framing this third issue as, "[i]s a decision based upon an incomplete and inaccurate assessment of a claimant's RFC supported by substantial evidence?" For the reasons explained herein, the court agrees with Plaintiff's third assignment of error, and will remand this matter to the Commissioner for further proceedings without reaching Plaintiff's other assignments of error.

*2. Third Assignment of Error: Residual Functioning Capacity*

Plaintiff argues that remand is required because the ALJ failed to perform a function-by-function analysis in formulating his RFC. RFC is a statement of the most a person can do in a work setting in light of his impairments, and any related symptoms, such as pain. 20 C.F.R. § 404.1545. RFC assesses an individual's ability to do sustained, work-related physical and mental activities in a work setting on a regular and continuing basis, meaning eight hours a day for five

days a week, or an equivalent work schedule. SSR 96-8P, 1996 WL 374184, at *1. In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments, including the impact of any related symptoms. Id. An ALJ formulates a claimant's RFC based on all relevant evidence in the record. 20 C.F.R. § 404.1545.

"The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8P, 1996 WL 374184, at *1. This assessment must address both the exertional and non-exertional capacities of the individual. Id. at *5. Exertional capacity "addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. Nonexertional capacity considers work-related limitations and restrictions that do not depend on an individual's physical strength, such as "an individual's abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision)...it also considers the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes)." Id. Only after that function-by-function analysis has been completed may RFC "'be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.'" Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96–8p). Additionally, SSR 96-8p "explains that the [RFC] assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings)

and nonmedical evidence (e.g., daily activities, observations)." Id. (internal quotation marks and citations omitted). The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8P, 1996 WL 374184, at *7.

The Fourth Circuit's recent decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015) addressed, inter alia, the required function-by-function analysis. The Court in Mascio declined to adopt a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," noting that such rule "would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Id. at 636 (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Instead, the Court found that remand may be appropriate where "'an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Id. (quoting Cichocki, 729 F.3d at 177).

Here, Plaintiff argues that remand is warranted because the ALJ failed to make any findings as to his ability to lift, carry, stand, walk, and sit before determining that he was capable of performing sedentary work, which involves all of those functions. The Social Security regulations define sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567. Defendant contends that the ALJ did perform a function-by-function analysis through his discussion of the medical evidence of record related to exertional functions.

Defendant first cites the ALJ's discussion of Plaintiff's reports of his daily activities, wherein the ALJ noted:

> Function reports indicate that the claimant is able to maintain a household independent of direction and supervision. He cares for his small children, by feeding, bathing, and supervising them. In addition, he reported preparing simple meals on a daily basis, making the bed, folding clothes, paying bills, driving unaccompanied, shopping a few times per week. Medical providers described the claimant as having a 'very fit physical appearance'… The undersigned concludes that these activities are consistent with the above residual functional capacity.

(Tr. 22). Defendant argues that because the function reports indicate that Plaintiff engages in daily activities that require "significantly more exertional strength" than sedentary work, the ALJ considered Plaintiff's functional abilities. The court disagrees, as an assessment of Plaintiff's ability to do household chores does not reflect that the ALJ expressly considered Plaintiff's ability to sit, stand, walk, lift, or carry. Clearly, carrying out such daily activities involves the functions detailed in SSR 96-8p to a certain extent, but the ALJ's discussion of such functions is different than the required function-by-function analysis of SSR 96-8p. The court is simply unable to tell from the ALJ's decision how the medical evidence of record, as accepted by the ALJ, explains the amount of time each work day Plaintiff is able to carry out each function. See SSR 96-8P, 1996 WL 374184, at *2 ("RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.").

Next, Defendant notes that the ALJ also gave great weight to the opinion of Dr. Dubiel, who opined that Plaintiff may have lifting and carrying limitations based on his medically documented impairments. (Tr. 23). The ALJ also concurred with her opinion that no objective

evidence supports the conclusion that Plaintiff would have an impaired ability to sit, stand or walk. (Tr. 23). However, the ALJ then went on to find it "reasonable to conclude that the claimant's ongoing hernia condition would interfere with the lifting, carrying, standing, and walking requirements of light work." (Tr. 23). The ALJ did not, however, make any findings as to <u>what extent</u> Plaintiff's condition would interfere with such functions, which is crucial given that sedentary work requires at least some application of each of those functions. Additionally, the ALJ's statements are somewhat contradictory, first giving great weight to a medical opinion finding that Plaintiff has no limitations in sitting, standing, or walking, and then "finding it reasonable" that Plaintiff's condition would interfere with standing and walking to a certain extent. While it is quite possible that Plaintiff is capable of performing the functional requirements of sedentary work, the ALJ does not explicitly state how Plaintiff would be able to carry out such functions. It is not the role of this court to guess his logic.

Finally, Defendant notes that the ALJ "[gave] some weight to the opinions of the State agency medical consultants in that the claimant is limited to a range of light-exertion work," (Tr. 23), but then found that considering Plaintiff's subjective complaints, he would be limited to a full range of sedentary work. (<u>Id.</u>). Defendant then offers the court the detailed functional findings of the State agency medical consultants, both of whom opined that Plaintiff could occasionally lift and carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk with normal breaks for a total of about 6 hours in an 8-hour workday, sit with normal breaks for a total of about 6 hours in an 8-hour workday, and push and or pull, including operation of hand and or foot controls, for an unlimited amount of time other than that shown by the lifting and carrying limitations. <u>See</u> (Tr. 53-4, RFC assessment of Kimberly Moore, SDM, May 7, 2012; Tr.

71-2, RFC assessment of Robert Gardner, M.D., September 5, 2012). Dr. Gardner also added postural limitations of unlimited climbing of ramps, stairs, ladders, ropes, and scaffolds, as well as unlimited balancing, and crawling, with occasional kneeling and crouching. (Tr. 71-2). Despite Defendant's argument that these qualify as consideration of the required functions, the ALJ did not expressly include any of these opined limitations in his written decision. Moreover, the ALJ failed to state which portions of such opinions he gave "some weight," thus making it impossible for the court to tell which of these functional assessments the ALJ found credible and which he rejected. Again, while it is quite possible that Plaintiff is capable of performing the requirements of sedentary work, it is unclear from the ALJ's analysis how he arrived at such a conclusion considering the lack of a function-by-function analysis. In spite of Defendant's attempts to cobble together sufficient statements in the record indicating that the ALJ did consider the functions, as required by SSR 96-8p, those efforts fall short.

The court also finds that the lack of the explicit function-by-function analysis was not harmless error in this case, as the ALJ acknowledged that Plaintiff's hernia condition could reasonably affect his exertional functions of lifting, carrying, standing, and walking, but made contradictory statements as to Plaintiff's ability to carry out those functions. See (Tr. 23-24). Additionally, as in Mascio, "although the ALJ concluded that [plaintiff] can perform certain functions, he said nothing about [his] ability to perform them for a full workday." Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015). Here, the directives of Mascio and SSR 96-8P require remand because the ALJ failed to explicitly assess Plaintiff's capacity to perform relevant functions and because it is unclear how the medical evidence of record supports a finding that Plaintiff is capable of performing the full range sedentary work for a full workday.

### E. Conclusion

The court has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's motion and brief, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is not supported by substantial evidence. See Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Perales, 402 U.S. at 401 (internal citations omitted), Plaintiff's Motion for Summary Judgment will be granted, the Commissioner's Motion for Summary Judgment will be denied, and the decision of the Commissioner will be remanded for further proceedings consistent with this Order.

### ORDER

**IT IS, THEREFORE, ORDERED** that:

1. the decision of the Commissioner, denying the relief sought by Plaintiff, is **REVERSED;**
2. Plaintiff's Motion for Summary Judgment (#9) is **GRANTED**;
3. the Commissioner's Motion for Summary Judgment (#15) is **DENIED**; and
4. this action is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

Signed: December 11, 2015

Max O. Cogburn Jr.
United States District Judge